IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN P. JANDREW | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV800 |
| | ) | |
| DOCTOR CORIGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on four motions. Plaintiff John P. Jandrew has filed a motion entitled "Motion to Sever Claims and Partys" (Docket Entry 12) and a motion entitled "Motion to Amend Complaint; extension for time" (Docket Entry 17). Defendants Bailey, Kehely, and Lenard ("Officer Defendants") have filed a "Motion to Dismiss the Complaint, or in the Alternative, Motion for Summary Judgment . . ." (Docket Entry 14) and a "Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment . . . ." (Docket Entry 21). For the following reasons, the undersigned will grant Plaintiff's "Motion to Amend Complaint; extension for time" and recommend denying Plaintiff's "Motion to Sever Claims and Partys." The undersigned also recommends that the "Motion to Dismiss the Complaint, or in the Alternative, Motion for Summary Judgment . . ." be terminated as moot and the "Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment . . . ." be granted.

1

## I. Background

On September 15, 2023, Plaintiff, a *pro se* pretrial detainee, filed an application to proceed *in forma pauperis* ("IFP"), a complaint, and a supplement to the complaint. (*See* Docket Entries 1-3.) Thereafter, the Court granted Plaintiff's IFP status. (Docket Entry 4.) In Plaintiff's complaint ("Complaint") and supplement ("First Supplement"), he alleges that several employees of the Rowan County Detention Facility ("Detention Center") used excessive force against him. (*See* Docket Entry 3 at 1-6.)[1] He further seeks to bring a claim for deliberate indifference to a serious medical need against "Dr. Corigan" and an unnamed "Medical Director" employed by Well Path. (*See* Docket Entry 2 at 2-6.)

First, as to his deliberate indifference claim, Plaintiff notes that, before his incarceration, in July 2021, he broke his hip and pelvic bone in a motorcycle accident, which resulted in "necrosis of the hip" and causes chronic pain. (*See id.* at 17.) Plaintiff claims that he needs a full hip replacement, but the Detention Center has refused for over a year to approve the surgery. (*See id.* at 14, 15, 17.) Since he has not received the surgery, he alleges he now suffers from "wear and tear" on the opposite side of his body. (*See id.* at 16.)

Next, Plaintiff seeks to bring an excessive force claim against Defendants Ortega,[2] Bailey, Kehely, and Lenard for an incident that occurred in May 2023. (Docket Entry 3 at 2-

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] Summons were issued to Defendants Ortega, Bailey, Kehely, and Lenard in October 2023. (*See* Docket Entry 5.) Service was executed on Defendants Bailey, Kehely, and Lenard (Docket Entry 9) but was returned unexecuted for Defendant Ortega (Docket Entry 7). In February 2024, Plaintiff moved to amend his complaint. (Docket Entry 17.) As part of his amendment, Plaintiff requested to remove Defendant Ortega from the action. (*See id.* at 10.) All references to "Officer Defendants" refer only to Defendants Bailey, Kehely, and Lenard.

3.) He alleges that, after finding contraband in his cell, he was escorted by all four men to the "Lockdown Pod." (*See* Docket Entry 2 at 12.) While being escorted, he asserts that the officers shoved him in his back, despite "[a]ll the officers know[ing] I have hip injurys (*sic*) and cannot walk right." (*Id.*) After being shoved, he claims that because he could not keep up pace due to his hip injury, he was drug to the door of the "Lockdown Pod." (*Id.* at 13 (noting that the officers "threw me on the ground in anger, and drug me by my shirt collar, choking me, imbarrassing (*sic*) me as other were watching . . .").) At this point, he claims that he was slammed into the door. (*Id.*) He asserts that his hip condition was exacerbated by this incident, which is apparent from x-rays taken before and after the incident. (*See* Docket Entry 2 at 14.) He further alleges that he "gave a handwritten grievance to Officer Ray regarding the incident." (*See* Docket Entry 3 at 7-8.)

Plaintiff also briefly mentions another possible incident from May 2023, in which he claims was aggressively placed in a restraint chair after Officer Bailey accused Plaintiff of attempting to grab his taser.[3] (*See* Docket Entry 2 at 19-20.) He claims that "one officer had me by my legs[,] stomping on my knees. I did not reach for his weapon, I was cuffed behind my back as well" and also Officer "Ortega kept jumping on my back." (*Id.* at 19.)

## II. Discussion

### A. Motion to Sever

In January 2024, Plaintiff filed a "Motion to Sever Claims and Partys." (Docket Entry 12.) In his motion, he asserts that he intended to file two separate actions, one against Officer

---

[3] It is unclear from the Complaint whether this event occurred while being transferred to the "Lockdown Pod" or on a separate occasion.

Defendants for excessive force and one against "Medical Director" and Dr. Kevin Corigan for deliberate indifference, but instead both claims were filed as one action. (*See id.* at 1-2.) As a result, he seeks to "sever [the] claims, and or parties" pursuant to Fed. R. Civ. P. 21. (*See id.* at 2.)

> In considering whether to sever claims under Rule 21, the court considers:
>
>> (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*White v. City of Greensboro,* No. 1:18-CV-00969, 2022 WL 3139952, at *5 (M.D.N.C. Aug. 5, 2022) (citation omitted). Courts also consider "(5) fundamental fairness, (6) judicial economy, (7) undue delay, and (8) the dual threat of duplicative litigation and inconsistent verdicts." *Id.* (citing *Moulvi v. Safety Holdings, Inc.,* No. 3:20CV595, 2021 WL 4494191, at *6 (E.D. Va. Sept. 30, 2021). A court can "deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). Discretion to sever claims should "be exercised sparingly." *Moulvi,* No. 3:20CV595, 2021 WL 4494191, at *6 (citation omitted).

Here, in consideration of the factors, the undersigned recommends denying Plaintiff's motion to sever. The first factor weighs against severing the claims. Plaintiff brings both claims under § 1983 against defendants who work in the same detention facility regarding claims that arose while in the facility, and thus the claims and parties do not significantly differ from one

another. Also, while the claims against the two set of defendants are not identical, they both relate to Plaintiff's hip injury. The second factor also weighs in favor of severance. While some witnesses and documents might differ between the two claims, witnesses, such as medical personnel, and documents, such as Plaintiff's medical records, would overlap. Next, if severance was granted, it would require the trying of two separate cases, which would be judicially inefficient, both in terms of time and resources. Finally, Plaintiff will not be prejudiced by denying the motion. Therefore, the undersigned recommends denying Plaintiff's motion to sever the claims and parties (Docket Entry 12).

**B. Motion to Amend the Complaint**

Thereafter, Plaintiff filed a motion to amend his complaint as a matter of course pursuant to Rule 15(a)(1).[4] Fed. R. Civ. P. 15(a)(1). (Docket Entry 17 at 1.) Officer Defendants did not oppose the motion. (Docket Entry 18 at 1.) The motion to amend includes a numbered list of the amendments that Plaintiff seeks to make to his original filings. (*See* Docket Entry 17 at 7-12.) The most significant amendments are as follows: First, Plaintiff asserts that he "made no aggression towards" Officer Defendants during the incident and he was also handcuffed, so any use of force was unreasonable. (*Id.* at 8-9.) Next, "Plaintiff moves to strike Officer Ortega from the Complaint, as he cannot be served." Finally, Plaintiff seeks to amend his requested relief to $200,000 in punitive damages and $100,000 in compensatory damages. (*Id.* at 10-12.) He cites to *Hendrickson v. Cooper* in support of his requested relief. (*Id.* (citing 589

---

[4]Within this motion, Plaintiff also requested an extension of time to file his amended complaint, citing the delay in receiving documents while housed at the detention center. (*See* Docket Entry 17 at 1.)) Because Plaintiff's motion was timely filed within 21 days of Defendants' response pleading and was unopposed, there is no need for the undersigned to extend the time to file his motion. *See* Fed. R. Civ. P. (a)(1).

5

F.3d 887 (7th Cir. 2009).) As Plaintiff filed his motion to amend as a matter of right, the undersigned grants Plaintiff's request to amend his complaint (Docket Entry 17) and instructs the clerk to file pages 7-12 of his motion as an additional supplement to his Complaint (hereinafter, the First Supplement and this additional supplement are identified as "Supplements"). Since Plaintiff requests that all claims against Defendant Ortega be dismissed as part of his motion to amend his complaint, the undersigned orders that all claims against Defendant Ortega by dismissed and that he be terminated as a defendant.

### C. Motion to Dismiss the Amended Complaint

In February 2024, Officer Defendants filed a "Motion to Dismiss the Complaint or, in the Alternative, a Motion for Summary Judgment . . ." (hereinafter "First Motion to Dismiss"), along with an accompanying memorandum. (Docket Entries 14, 15.) Soon after, Plaintiff filed his motion to amend (Docket Entry 17), to which Officer Defendants responded by filing a "Motion to Dismiss the Amended Complaint or, in the Alternative, a Motion for Summary Judgment . . ." ("Summary Judgment Motion"), along with an accompanying memorandum. (Docket Entries 21, 22.) Since the undersigned grants the motion to amend his complaint, the undersigned recommends denying as moot the First Motion to Dismiss (Docket Entry 14) and will now address the Summary Judgment Motion (Docket Entry 21) as the operative motion.

Officer Defendants argue that Plaintiff's excessive force claim should be dismissed because Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") before filing the instant action. (*See* Docket Entry 21; Docket Entry 22 at 4-12.) Alternatively, Officer Defendants assert that Plaintiff has failed to state a claim against them for inadequate medical care. (*See id.* at 12-13.) Finally, Officer Defendants allege that any official capacity claims against them fail to state a claim and are duplicative. (*See id.* at 14-15.)

6

As part of their Summary Judgment Motion, Officer Defendants attached an affidavit from Captain Audrey Mackey, who serves as the jail administrator for the Rowan County Sheriff's Office. (Mackey Aff., Docket Entry 21-1 at 1-3.) In her affidavit, she states that Plaintiff did not file any grievances against Officer Defendants for the excessive force incident in May 2023. (*Id.* at 3.) Officer Defendants also attached a copy of the "Inmate Grievance Policy" (Ex. A, Inmate Grievance Policy, Docket Entry 21-2 at 2-7), and copies of the grievances filed by Plaintiff during the applicable timeframe. (Ex. B, Kiosk History, Docket Entry 21-3 at 1-11; Ex. C, Plaintiff's Grievances, Docket Entry 21-4 at 1-16.)

Plaintiff responded to both the First Motion to Dismiss and the Summary Judgment Motion. (Docket Entries 19, 26.) In his response to the First Motion to Dismiss, Plaintiff attached copies of his grievances from the relevant timeframe. (Ex. C, Plaintiff's Copy of Grievances, Docket Entry 19-1.) He also argues that "Officer Defendants failed to prove the Plaintiff's route of exhaustion does not conform pursuant to PLRA 1997e(a)" (*see* Docket Entry 19 at 2-3) and his verbal appeal to "the Captain" was sufficient to satisfy the exhaustion requirement. (*See id.* at 3; *see also* Docket Entry 3 at 7.) Plaintiff notes that the Rowan County Detention Center policy is ambiguous because inmates are instructed to use an electronic kiosk to file a grievance, but these methods are "not formally recognized in the policy." (Docket Entry 19 at 3.) Furthermore, he asserts that verbal grievances and appeals are not expressly prohibited. (*Id.*) He also alleges that the PLRA is unconstitutional because it violates the Due Process Clause, the Equal Protection Clause, the First Amendment, the separation of powers, and the Civil Rights Act. (*See id.* at 17.)

### 1. Relevant Standard of Review

Officer Defendants request that the Court consider converting their motion to dismiss into a motion for summary judgment, so that the Court can consider the documents attached to the motion. (*See* Docket Entry 21.) *See Morris v. Lowe's Home Ctrs., Inc.,* No. 1:10–CV–388, 2011 WL 2417046, at *2 (M.D.N.C. June 13, 2011) (unpublished) ("When matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." (citation omitted)). "When converting a motion to dismiss into a motion for summary judgment, [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the [converted] motion." *Willis v. Berryhill,* No. 1:16CV51, 2017 WL 420151, at *1 (M.D.N.C. Jan. 30, 2017) (citing *Woods v. Colvin,* No. 1:15CV763, 2016 WL 1328951, at *2 (M.D.N.C. Apr. 5, 2016) (internal quotations and citation omitted). The first requirement—notice—is satisfied when the court gives the parties "some indication . . . that it is treating the 12(b)(6) motion as a motion for summary judgment." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation and citation omitted). The second requirement is that the court must afford the parties "a reasonable opportunity for discovery" before converting the motion. *Id.* (internal quotation and citation omitted); *see also Williams v. Olympus Am., Inc.,* No. 1:17CV98, 2017 WL 2399332, at *1 (M.D.N.C. June 1, 2017).

Here, Plaintiff had notice that Officer Defendant's motion could be treated as a summary judgment motion and had a reasonable opportunity for discovery, and thus the undersigned recommends converting the motion to a summary judgment motion. Officer Defendants filed their First Motion to Dismiss in February 2024. (Docket Entry 14.) In that

motion, Officer Defendants attached documents for the Court to consider and stated that the motion could alternatively be considered a summary judgment motion. (*See id.*) In response, Plaintiff filed an extensive Response (Docket Entry 19) and attached copies of the relevant grievances (Docket Entry 19-1 at 1-14). After Officer Defendants filed their Motion for Summary Judgment, Plaintiff filed an additional Response and a Reply. (*See* Docket Entries 26, 31.)

Plaintiff was further put on notice by the *Roseboro* letter sent to him, which advised him:

> The defendant, BAILEY, KEHELY, LENARD filed a Motion to Dismiss on 3/26/2024, which may or may not be supported by affidavits.
>
> You have the right to file a 20-page response in opposition to the defendant(s)' motion(s). *Your failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the court to conclude that the defendant(s)' contentions are undisputed and/or that you no longer wish to pursue the matter. Therefore, unless you file a response in opposition to the motion, it is likely your case will be dismissed, or judgment granted in favor of the defendants.* A response to a Motion to Dismiss must be filed within 21 days from the date of service of the defendant(s)' motion upon you.
>
> Any response you file should be accompanied by a brief containing a concise statement of reasons for your opposition and a citation of authorities upon which you rely. *You are reminded that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify.* A false statement under oath or under penalty of perjury may be a crime punishable as provided by law.

(Docket Entry 23) (emphasis added). Because the *Roseboro* Letter advised Plaintiff to respond with "affidavits or evidence in rebuttal," he was further put on notice that the Court might consider summary judgment. Therefore, Plaintiff's multiple responses after Officer Defendant's request to convert the motion to dismiss to a summary judgment motion,

Plaintiff's submission of documents for the Court's consideration, and the *Roseboro* letter demonstrate that Plaintiff was on notice that the motion might be converted to a summary judgment motion and had a reasonable opportunity for discovery. Accordingly, the undersigned considers Officer Defendant's amended motion to dismiss (Docket Entry 21) as a motion for summary judgment pursuant to Rule 56.

### 2. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.,* 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.,* 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex,* 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the Court must view the evidence—and all justifiable inferences to be drawn from the evidence—in the light most favorable to the non-moving party. *Zahodnick,*

135 F.3d at 913; *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49; *see also Williams,* No. 1:17CV98, 2017 WL 2399332, at *2.

Officer Defendants contend that the Court should dismiss Plaintiff's claim for excessive force because he did not exhaust his administrative remedies pursuant to the PLRA. (Docket Entry 22 at 5-13.) The PLRA requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled that the PLRA's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524); *see also Parker v. Torres*, No. 1:21CV173, 2022 WL 2982549, at *5 (M.D.N.C. July 28, 2022).

A review of Plaintiff's Complaint and Supplements, along with the documents that have been submitted, demonstrate that Plaintiff did not exhaust his administrative remedies before filing the instant action. The Inmate Grievance Policy for the Rowan County Detention

11

Facility (Docket Entry 21-2) states that grievances must be filled out on the appropriate form and given to a detention officer, who then forwards the grievance to a grievance officer. (*See id.* at 2-3.) *See Jones v. Bock,* 549 U.S 199, 218 (2007) (noting that the process utilized to exhaust one's remedies "are defined not by the PLRA, but by the prison grievance process itself"). After the grievance is disposed of by the grievance officer, "[i]f the inmate is not satisfied with the disposition of the grievance by the Grievance Officer," the inmate has the opportunity to file two levels of appeals. (Docket Entry 21-2 at 3.) After this three-step process is completed, the inmate's administrative remedies have been exhausted, and he may file an action with the court. *See Germain v. Shearin,* 725 F. Appx. 225, 234-35 (4th Cir. 2018).

In his Complaint and Supplements, Plaintiff alleges that he did not utilize the electronic kiosk system provided for inmates to file his grievance but instead gave a handwritten grievance to "Disciplinary Officer W. Rey." (Docket Entry 3 at 8.) Despite producing numerous grievances, neither Plaintiff nor Officer Defendants have produced this handwritten grievance. Moreover, it is unclear why Plaintiff would submit a handwritten grievance on this one occasion instead of using the kiosk system that he used many times before and after the May incident. In Plaintiff's Response to the First Motion to Dismiss (Docket Entry 19), he asserts that he was "scared" to file a grievance via the kiosk. (*Id.* at 13.) Though, Plaintiff does not make this argument in his Complaint or Supplements, nor do the many grievances Plaintiff filed during the applicable timeframe support his assertion. Additionally, it is unclear why Plaintiff would fear retaliation for filing a grievance through the kiosk but not fear filing a handwritten grievance.

12

Plaintiff then asserts that he verbally appealed this handwritten grievance by speaking with Captain Mackey. (Docket Entry 3 at 7-8.) However, he also claims that he was "unsure" of the result of the handwritten grievance, so it is unclear how he would appeal the result of a grievance without knowing what the result was. (*Id.* at 7.)

Furthermore, even if a handwritten grievance and verbal appeal were sufficient to satisfy the first step and second steps in the grievance procedure, Plaintiff does not allege that he satisfied the necessary third step of the exhaustion procedure. No matter the delivery method, completing the first two steps of the three-step process is not sufficient to satisfy the PLRA's exhaustion requirement. *See* 42 U.S.C. §1997e(a); *Woodford,* 548 U.S. at 85. Thus, Plaintiff has not exhausted his administrative remedies against Officer Defendants.[5]

In Plaintiff's Response to the First Motion to Dismiss, he seems to modify his argument to reflect that, in fact, he *did* submit a kiosk grievance regarding the May incident, but "grievances are mishandled." (*See* Docket Entry 19 at 6-7.) Ms. Mackey's Affidavit notes that Plaintiff "filed 15 pages of grievances [during the applicable time period], and none of the grievances were for the May 2023 incident[(s)]" relating to excessive force, but she does note that Plaintiff filed a grievance on August 22, 2023 that briefly alluded to an incident involving the use of force ("August 22 Grievance," Docket Entry 21-4 at 12.) (*See* Docket Entry 21-1 at 3). Upon review of the grievances submitted by Officer Defendants (*see* Docket Entry 21-4) and the grievances submitted by Plaintiff (*see* Docket Entry 19-1), the record reveals that the

---

[5] In Plaintiff's First Supplement, he named "Doe Discovery" as a defendant. (Docket Entry 3 at 1.) However, he does not further elaborate on who he was trying to identify. (*See generally id.*) Therefore, any claims against "Doe Discovery" should be dismissed.

only grievance that mentions any use of force is the August 22 Grievance. (*See* Docket Entry 21-4 at 12.) In its entirety, the grievance reads

> lenard came up to talk to me about a issue i requested a sgt, or lt on, he had an additudue problem. being that he is self proclaimed one of the inciated the use of excessive force against me when the ice team drug me while I was handcuffed, and crippled, I view it as a personal issue, and potential bad motives towards me.

(*Id.*)

The Court will not consider the August 22 Grievance for several reasons. "Fourth Circuit courts have consistently concluded that a party may not use a brief opposing summary judgment to amend a complaint." *Robinson v. Bowser,* No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) (citing *Wahi v. Charleston Area Med. Ctr.,* 562 F.3d 599, 616–17 (4th Cir.2009)); *see also Watson v. England,* No. 1:19CV945, 2022 WL 19919968, at *20 (M.D.N.C. May 20, 2022), *report and recommendation adopted,* No. 1:19CV945, 2022 WL 20615083 (M.D.N.C. July 5, 2022). "In essence, this means that the Court will not allow Plaintiff to raise a new argument at the summary judgment stage, the basis of which was not evident from the Complaint." *Robinson,* No. 1:12CV301, 2013 WL 5655434, at *3. Since Plaintiff makes a completely different argument in his Complaint and Supplements, *i.e.,* he submitted a handwritten grievance instead of utilizing the electronic kiosk, the Court cannot adopt his argument that the August 22 Grievance relates to the May incident.

Moreover, even if the Court could consider the August 22 Grievance, it does not name any Defendants besides Lenard that might help determine whether it referenced the May incident, nor does it provide any supporting factual details, such as who else participated or when the incident occurred, that would be needed to make a finding in the matter. (Docket

Entry 21-4 at 12.) Instead, the grievance is centered on Defendant Lenard's alleged attitude "problem" during a conversation that occurred during a separate incident. (*Id.*) Therefore, it appears that, while the August 22 Grievance references the May incident, it was not filed directly in response to the May incident and thus does not constitute a grievance relating to the May incident.

Plaintiff also alleges that the Rowan County Detention Center policy is ambiguous because it does not specify whether a handwritten or verbal submission is acceptable.[6] (*See* Docket Entry 19 at 3.) The Court will not address this argument because, even assuming *arguendo* that the policy was ambiguous as to the delivery method required for submitting a grievance, Plaintiff does not allege that the requirement to complete the three-step process is ambiguous. Plaintiff does not claim that he has completed all three steps, regardless of his preferred delivery method. Therefore, the undersigned finds that there is no genuine issue of material fact concerning whether he exhausted his administrative remedies.[7]

Plaintiff also states in a conclusory manner that the PLRA is unconstitutional because it violates the First Amendment, the Equal Protection Clause, the Civil Rights Act, the separation of powers, and the Due Process Clause. (*See id.* at 16-18.) While he notes the law

---

[6] Plaintiff's argument centers around the fact that the PLRA requires exhaustion of "available" remedies, and the only option available to Plaintiff was through verbal or handwritten communication, though it is unclear why the kiosk was not available to him. (*See* Docket Entry 19 at 8-10.) He further asserts that grievances and appeals were routinely misplaced, though he does not appear to argue that the grievance submitted in this matter was misplaced. (*See id* at 5.)

[7] As to the incident involving Plaintiff's alleged attempt to grab Officer Bailey's taser (Docket Entry 2 at 19), it is unclear if this occurred during the May incident or on another occasion, or whether Plaintiff seeks to bring a claim regarding this incident. To the extent that he attempts to bring a separate claim for excessive force, the claim fails several reasons. First, Plaintiff does not identify the officers who were involved except for Officer Bailey. (*Id.*) Second, he has not made an argument that he exhausted his administrative remedies for this incident. Accordingly, any separate claim related to the taser incident should be dismissed.

15

related to his assertions and makes conclusory statements that the PLRA is violative, he does not provide any factual support as to how the PLRA violates the Constitution. Since the PLRA and its exhaustion requirement have been upheld numerous times by other courts, including the Supreme Court, and because Plaintiff has not alleged sufficient facts to raise a plausible claim, the undersigned will not further address this argument. *See Woodford,* 548 U.S. at 103 (2006); *Miller v. French,* 530 U.S. 327, 350 (2000); *Porter,* 534 U.S. at 532; *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Cagle v. Hutto,* 177 F.3d 253, 258 (4th Cir. 1999); *Roller v. Gunn,* 107 F.3d 227, 238 (4th Cir. 1997); *Thomas v. Porcher*, No. 1:12CV223, 2014 WL 4924269, at *8 (M.D.N.C. Sept. 30, 2014), *aff'd,* 599 Fed. Appx. 94 (4th Cir. 2015) ("There is no constitutional right to a grievance process."); *Gevara v. Bennett,* No. 1:09CV343, 2010 WL 1439007, at *5-6 (M.D.N.C. Apr. 12, 2010), *report and recommendation adopted,* No. 109CV343, 2010 WL 3787119 (M.D.N.C. Sept. 21, 2010), *aff'd,* 406 Fed. Appx. 704 (4th Cir. 2010).

Finally, Officer Defendants note that all claims against them in their official capacities also fail. (*See* Docket Entry 22 at 14-15.) Liability only exists in official capacity claims if the "execution of a governments policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). "The fact that an official has discretion in the performance of his official duties does not mean that those acts represent official policy." *Gantt v. Whitaker*, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002), *aff'd*, 57 F. App'x 141 (4th Cir. 2003); *see also Tart v. Johns,* No. 1:18CV598, 2021 WL

11139974, at *3 (M.D.N.C. June 11, 2021). Additionally, isolated incidents are insufficient to impose liability in official capacity claims. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985).

Here, Plaintiff does not allege any official policy or custom caused his injury; nor does he allege that Officer Defendants acted in accordance with an official policy; nor does he demonstrate that Officer Defendants had final policy-making authority regarding any policies that might have caused his alleged injury. Further, he only alleges one, isolated incident in which excessive force was used. Therefore, he has not shown that there is any remaining genuine issue of material fact, and so summary judgment should be granted in favor of Officer Defendants as to any claims in their official capacity. *See Tucker v. Kivett*, No. 1:18CV897, 2019 WL 6841840, at *3 (M.D.N.C. Dec. 16, 2019) (unpublished) ("Plaintiff [does not] provide evidence to support a claim that his rights were impaired by the act(s) of any of the FCDC Officers [nor] that any of them had final policy making authority."); *Blackwell v. Houser*, No. 5:16-CV-67-FDW, 2017 WL 4684188, at *8 (W.D.N.C. Oct. 18, 2017) ("Generally, the failure to allege a specific policy or custom is fatal to an official capacity claim against a government unit[.]"), *aff'd*, 719 F. App'x 263 (4th Cir. 2018); *see also Tart* No. 1:18CV598, 2021 WL 11139974, at *3. Therefore, the undersigned recommends granting Officer Defendant's Motion for Summary Judgment.[8]

---

[8] Officer Defendants also note that Plaintiff has not sufficiently alleged a claim against them for deliberate indifference to a serious medical claim. (*See* Docket Entry 22 at 13.) The undersigned agrees. Even under a liberal reading of Plaintiff's Complaint and Supplements, Plaintiff only alleges an excessive force claim against Officer Defendants. His claims for deliberate indifference are solely against the "Medical Director" and "Dr. Corigan." Therefore, the Court will not address deliberate indifference as it relates to Officer Defendants.

17

**D. Remaining Defendants**

In his Complaint and Supplements, Plaintiff seeks to bring a deliberate indifference claim against "Medical Director" and "Dr. Corigan."[9] (*See* Docket Entry 2 at 1-4.) The docket indicates that Plaintiff never attempted service on "Medical Director." Therefore, pursuant to Rule 4(m), all charges against "Medical Director" should be dismissed. *See* Fed. R. Civ. P 4(m) ("If a defendant is not served within 90 after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant . . . .").

As to Defendant "Dr. Corigan," the docket indicates that summonses were issued and returned executed on both November 11, 2023 (Docket Entries 5, 8) and May 09, 2024 (Docket Entries 30, 32). However, the signature on the return receipts for both service attempts is not Dr. Corigan's, and no responsive pleading has been filed on his behalf. Therefore, it is unclear whether "Dr. Corigan" has had notice of the action against him or whether service was properly executed. Accordingly, the undersigned will direct Plaintiff to advise the court how he wishes to proceed as to "Dr. Corigan."

**III. Conclusion**

Therefore, for the reasons stated above, it is hereby **ORDERED** that, to the extent that the Plaintiff's motion entitled "Motion to Amend Complaint; extension of time" is a request to amend his Complaint, the motion is granted. (*See id.*) The undersigned directs the clerk to separately file pages 7-12 of the motion (Docket Entry 17) as an additional supplement

---

[9] It is unclear from the Complaint whether "Dr. Corigan" and "Medical Director" refer to the same defendant or two different defendants.

18

to his complaint. Additionally, pursuant to Plaintiff's request, the undersigned directs the clerk to terminate Officer Ortega as a defendant.

Also, it is hereby **RECOMMENDED** that Plaintiff's motion entitled "Motion to Sever Claims and Partys" (Docket Entry 12) be denied. Additionally, it is **RECOMMENDED** that the "Motion to Dismiss the Complaint, or in the Alternative, Motion for Summary Judgment of Defendants Officer Bailey, Officer Kehely, and Officer Lenard" (Docket Entry 14) be denied as moot. Also, it is **RECOMMENDED** that the "Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment, of Defendants Officer Bailey, Officer Kehely and Officer Lenard" (Docket Entry 21) be granted. Upon adoption of this Recommendation, all charges against Defendants Bailey, Kehely and Lenard should be dismissed.[10]

Additionally, it is hereby **RECOMMENDED** that all charges against "Medical Director" and "Doe Discovery" be dismissed. Regarding Defendant "Dr. Corigan," within ten days of the receipt of this Order and Recommendation, Plaintiff shall advise the court he how wishes to proceed as to this defendant.

/s/ Joe L. Webster<br>
United States Magistrate Judge

August 6, 2024
Durham, NC

---

[10] Plaintiff filed a "Motion for Summary Judgment" against Officer Defendants on July 26, 2024. (*See* Docket Entry 33.) However, the motion is not ripe. Since the undersigned recommends granting Officer Defendants Summary Judgment Motion, to the extent that this Recommendation is adopted, the undersigned also recommends that Plaintiff's Motion for Summary Judgment" be denied as moot.